UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

BRIAN HODGE, on behalf of himself
and all others similarly situated,

        Plaintiff,

v.                                                Civil Action No. 5:24-cv-00177

SYNERGY INSPECTIONS, LLC
and FIRMSO, LLC,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiff Brian Hodge's Motion for Default Judgment and Class Certification [ECF 14], filed February 21, 2025. Defendants have failed to make an appearance or respond to the motion. The matter is ready for adjudication.

I.

On April 4, 2024, Mr. Hodge instituted this action by filing a Class Action Complaint [ECF 1], on behalf of himself and all others similarly situated, against Defendants Synergy Inspections, LLC, and FIRMSO, LLC. According to the Complaint, Mr. Hodge and the proposed class members were, until March 15, 2024, employees of the Defendant companies. [*Id.* at 2]. On that date, Defendants allegedly terminated the employment of Mr. Hodge and all other employees without providing the required notice under the Worker Adjustment and Retraining Notice Act (the "WARN Act"), 29 U.S.C. § 2102. [*Id.*]. Mr. Hodge asserts there were no "unforeseen business circumstances" exempting Defendants from providing the requisite notice.

[*Id.*]. Further, Mr. Hodge claims that "Defendants failed to pay Plaintiff and others sixty days pay and benefits owed to them under the WARN Act between the dates of March 15, 2024[,] and May 15, 2024." [*Id.* at 4]. He seeks the value of the terminated employees' wages and benefits for the 60-day period, a civil penalty for each violation of the WARN Act, and reasonable costs and attorney fees. [*Id.*].

On January 29, 2025, the Court directed the Clerk to enter default against Defendants for failure to timely answer or otherwise respond. [ECF 6]. The Clerk entered default pursuant to *Federal Rule of Civil Procedure* 55(a) that same day. [ECF 7]. Mr. Hodge now moves for default judgment pursuant to Rule 55 and class certification under Rule 23.

## II.

"In 1988, Congress passed the WARN Act, which requires certain employers to provide notice to their employees of 'sudden, significant employment loss' so that they 'could seek alternative employment and their communities could prepare for the economic disruption of a mass layoff.'" *Schmidt v. FCI Enters. LLC*, 3 F.4th 95, 101 (4th Cir. 2021) (quoting *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 808 (4th Cir. 2007)). "The operative provision of the Act states that '[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order' to 'each affected employee' (or their union representative) and to the local government." *Pennington v. Fluor Corp.*, 19 F.4th 589, 595 (4th Cir. 2021) (quoting 29 U.S.C. § 2102(a)); *Long v. Dunlop Sports Grp. Americas, Inc.*, 506 F.3d 299, 301 (4th Cir. 2007). The Act only applies to an "employer," that is, "any business enterprise that employs . . . 100 or more employees, excluding part-time employees," 29 U.S.C. § 2101(a)(1)(A). A "plant closing" is defined under the Act as a "shutdown" with certain

2

characteristics that "results in an employment loss ... for 50 or more employees." *Id.* § 2101(a)(2). The Act further defines "employment loss" as "an employment termination, other than a discharge for cause, voluntary departure, or retirement." *Id.* § 2101(a)(6)(A). "'[A]ffected employees' are in turn defined as 'employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer.'" *Pennington*, 19 F.4th at 595 (quoting 29 U.S.C. § 2102(a)(5)); *see Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.*, 252 F.3d 296, 298 (4th Cir. 2001).

When a company fails to provide the requisite notice to its employees, the Act permits those individual employees who suffer an employment loss to bring suit to recover unpaid wages and other benefits for each day of a violation. *See* 29 U.S.C. § 2104(a). "The Act calculates an employer's liability for violations on the basis of the number of days of the violation, reduced by 'any wages paid by the employer to the employee,' but not reduced by wages the employee may earn from a new employer." *Long*, 506 F.3d at 301 (quoting 29 U.S.C. § 2104(a)(2)(A)).

### III.

As earlier noted, Mr. Hodge, who claims to be an employee affected by the Defendant entities' plant closures, moves the Court for default judgment pursuant to Rule 55 based on the Defendants' failure to appear and defend.

### A.    *Default Judgment - Legal Standard*

The *Federal Rules of Civil Procedure* provide that the Court may enter judgment against a party if such party fails to plead or otherwise defend against the asserted claims. Fed. R. Civ. P. 55. The United States Court of Appeals for the Fourth Circuit has a clear policy in favor of

deciding claims on their merits. *See Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969); *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."). However, "trial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments," and default judgments are warranted when a defendant fails to appear or participate. *United States v. Moradi*, 673 F.2d 725, 727 (1982); *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 106 (4th Cir. 2022) ("It is undeniable that default judgments are warranted 'against defendants who failed to appear or participate in the proceedings.'" (quoting *Chafin v. Chafin*, 568 U.S. 165, 175 (2013)).

Upon default, the well-pleaded allegations of fact are taken as true. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). This does not, however, extend to assertions related to damages. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation -- *other than one relating to the amount of damages* -- is admitted if a responsive pleading is required and the allegation is not denied.") (emphasis added). The Court must then determine whether the allegations in the plaintiff's complaint support the requested relief. *Ryan*, 253 F.3d at 780. Thus, Rule 55(b) authorizes a district court to "conduct hearings or make referrals" to, *inter alia*, "determine the amount of damages[,] establish the truth of any allegation by evidence[,] or investigate any other matter." Fed. R. Civ. P. 55(b)(2)(B)–(D). "[A] default judgment may not be entered without a full hearing unless the damages are liquidated or otherwise uncontested." *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 1992); *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020).

B.   *Plaintiff's Motion for Default Judgment*

Default judgment is warranted based upon Defendants' respective failures to appear and defend. The Complaint filed by Mr. Hodge, however, mentions no specific amount of damages sought. Rather, Mr. Hodge prays for compensatory damages for "the value of [the proposed class members'] wages and benefits for the 60-day [notification] period" required by 29 U.S.C. § 2102(a)(1), as well as civil penalties and reasonable costs and attorney fees. Recognizing that the Court cannot grant the requested relief without evidence about the specific amount of damages, Mr. Hodge requests that the Court "calendar an evidentiary hearing to determine the appropriate damages for purposes of entering default judgment, to be set in approximately 45 days, allowing time for the issuance of subpoenas and evaluation of the information received." [ECF 14 at 1].

Because the Court is unable to determine the amount of damages sought from the Complaint alone, an evidentiary hearing is appropriate. Accordingly, Mr. Hodge's Motion is **GRANTED**.

## IV.

Mr. Hodge next moves to certify his proposed class under Rules 23(a) and 23(b)(3).

A.   *Class Certification - Legal Standard*

"The class action device is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193, 202 (4th Cir. 2024) (quoting *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (internal citation and quotation marks omitted)); *see Gen. Tel. Co. of the Sw.*

*v. Falcon*, 457 U.S. 147, 155 (1982); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "The premise is that 'litigation by representative parties adjudicates the rights of all class members.'" *G.T.*, 117 F.4th at 202 (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998)). Thus, a party seeking class certification "must affirmatively demonstrate [its] compliance" with *Federal Rule of Civil Procedure* 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23 "contains an implicit threshold requirement that the members of a proposed class be readily identifiable[,]" commonly referred to as "ascertainability." *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024) (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)) (internal quotation marks omitted); *Kadel v. Folwell*, 100 F.4th 122, 160 (4th Cir. 2024) (recognizing "an implicit requirement" that "members of a proposed class be readily identifiable.") (internal quotation marks omitted). As such, "class definitions must be written with specificity" to "provide proper detail to identify whether or not a prospective class member was injured and whether their claim coheres with the rest of the certified class." *Stafford v. Bojangles' Rests., Inc.*, 123 F.4th 671, 681–82 (4th Cir. 2024). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *EQT*, 764 F.3d at 358 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). If, however, the class members are ascertainable, the certification inquiry continues to Rule 23(a), which provides pertinently as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "[C]ertification is proper only if 'the trial court is satisfied . . . that the prerequisites of Rule 23(a) have been satisfied." *Dukes,* 564 U.S. at 350–51 (quoting *Falcon*, 457 U.S. at 160–61); *Comcast*, 569 U.S. at 33.

In addition to subsection (a)'s requirements, a plaintiff seeking certification must also demonstrate the class action "fall[s] within one of the three categories enumerated in Rule 23(b)." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003); *see Stafford*, 123 F.4th at 678. Rule 23(b)(3), the applicable provision in this case, authorizes a class action where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 300 (4th Cir. 2024). In other words, "Rule 23(b)(3) has two components: predominance and superiority." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *see Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997) (describing predominance and superiority as part of "the qualification-for-certification list"); *Career Counseling*, 91 F.4th at 206. Rule 23(b)(3) sets forth the following factors to consider when deciding whether a class satisfies the predominance and superiority requirements:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

      (D)    the likely difficulties of managing a class action.

*Id.*

      A district court has "broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). "The party seeking class certification bears the burden of proof." *Id.* at 146 (citing *Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir. 1981)); *accord G.T.*, 117 F.4th at 202 (quoting *EQT*, 764 F.3d at 357) ("Merely pleading compliance with these requirements is not enough; rather, 'the party [seeking certification] must present evidence that the putative class complies with Rule 23.'") (emphasis added); *Stafford*, 123 F.4th at 679. When evaluating whether class certification is appropriate, the Court must "take a close look" at the "facts relevant to the certification question and, if necessary, make specific findings" relevant to certification. *Thorn*, 445 F.3d at 319 (citing *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004)); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (stating that "the district court must rigorously examine the core issues of the case at the certification stage"). This is necessary even if "the issues tend to overlap into the merits of the underlying case." *Thorn*, 445 F.3d at 319 (citing *Falcon*, 457 U.S. at 160); *Comcast*, 569 U.S. at 33–34 (stating that the court's analysis "will frequently entail 'overlap with the merits of the plaintiff's underlying claim' . . . because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action'") (internal citations omitted). However, "courts may consider merits questions "only to the extent necessary to verify that Rule 23 has been satisfied." *Williams v. Martorello*, 59 F.4th 68, 91 (4th Cir. 2023) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015)); *see Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,

568 U.S. 455, 466 (2013) (stating that although class-certification analysis may overlap with the merits of a case, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage").

B. *Plaintiff's Proposed Class*

1. **Ascertainability**

As a threshold matter, the Court must determine whether the proposed class members are ascertainable. Mr. Hodge proposes the following class definition: "All employees of each Defendant, at any work site or location in West Virginia, who were entitled to and did not receive proper WARN notice." [ECF 15 at 5]. He contends that class members will be identified in two ways: (1) using a ledger of email contact information obtained through Defendants' email listserv, and (2) through third-party payroll records that Mr. Hodge intends to subpoena. [*Id.* at 6]. Given that the class Mr. Hodge seeks to certify is comprised entirely of employees of the Defendant entities who were terminated in one fell swoop, identifying those individuals will require neither individualized inquiry nor the use of subjective criteria. Thus, ascertainability is satisfied.

2. **Numerosity - Rule 23(a)(1)**

Rule 23(a)(1) requires that the class be of sufficient size that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). In determining whether joinder is impracticable, a court should analyze the factual circumstances of the case rather than relying on numbers alone. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding that "eighteen is a sufficiently large number to constitute a class in the existing

circumstances" and noting that "[n]o specified number is needed to maintain a class action under Fed. R. Civ. P. 23"); *see also Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). However, "[a]s a general guideline, . . . a class that encompasses fewer than 20 members will likely not be certified . . . while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litigation*, 7 F.4th 227, 234 (4th Cir. 2021) (internal citation omitted).

The proposed class consists of more than 100 potential members, "with more possibly to be discovered." [ECF 15 at 6]. Accordingly, the class is sufficiently large to satisfy the numerosity requirement.

### 3. Commonality - Rule 23(a)(2)

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Although the rule speaks in terms of common questions, 'what matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *EQT*, 764 F.3d at 360 (quoting *Dukes*, 564 U.S. at 350); *Brown*, 785 F.3d at 909. "A single common question will suffice." *EQT*, 764 F.3d at 360 (quoting *Dukes*, 564 U.S. at 359). However, it "must be of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Duke*, 564 U.S. at 350. "Dissimilarities within the proposed class" have "the potential to impede the generation of common answers." *Id.* at 350 (internal quotation marks omitted); *see also Brown*, 785 F.3d at 909 ("[A] court must examine whether differences between class members impede the discovery of common answers.").

Commonality is evident here. Several common questions exist, including, but not limited to, (1) whether the proposed class members were employees of the Defendant entities, (2) whether there was a "mass layoff" of those employees, as defined in 29 U.S.C. § 2101(a), and (3) whether Defendants provided the requisite notice to their employees under the WARN Act. The answers to each of these questions are of such a nature as to be capable of resolving a central issue regarding the validity of each of the potential class members' claims. Accordingly, commonality is satisfied.

### 4.　Typicality - Rule 23(a)(3)

"The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff[s'] claims." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). To meet this requirement, the claims of the named plaintiffs must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As reiterated by the Supreme Court in *Dukes*,

> the commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

564 U.S. 349 n.5 (quoting *Falcon*, 457 U.S. at 157–58 n.13). Thus, "[t]he essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter*, 436 F.3d at 466 (quoting *Broussard*, 155 F.3d at 340). "The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Id.* at 466; While the claims of the named plaintiffs need not be "perfectly identical" to the claims of the class members, typicality is lacking where "the variation in claims strikes at the heart of the respective causes of actions." *Id.* at 467. Thus,

11

"the appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Id.*

Here, the claims of Mr. Hodge and the potential class members all arise from the same general conduct of the Defendants, that is, the failure to provide the requisite statutory notice of layoffs and plant closure. As such, neither the underlying facts supporting each claim nor the potential defenses to such claims are unlikely to vary substantially between class members. Mr. Hodge's interest in prosecuting the case will, undoubtedly, tend to advance the interests of the potential class members. Accordingly, typicality is satisfied.

5. **Adequacy - Rule 23(a)(4)**

Rule 23(a)(4) requires that the class representative and class counsel adequately represent the class. These requirements "provide critical safeguards against the due process concerns inherent in all class actions." *Bell v. Brockett*, 922 F.3d 502, 511 (4th Cir. 2019); *Dukes*, 564 U.S. at 363 ("In the context of a class action predominantly for money damages[,] we have held that absence of notice and opt out violates due process."). Accordingly, "a district court may certify a class only if the class representative[s] 'will fairly and adequately protect the interests of the class.'" *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019) (quoting *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010)). To this end, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)); *Dukes*, 564 U.S. at 348–49.

This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir.

2023) (quoting *Amchen*, 521 U.S. at 625)). Conflicts of interest that are "fundamental" and "go to the heart of the litigation" can prevent class certification. *Gunnells*, 348 F.3d at 430–31 (citations omitted). "A conflict is not fundamental when . . . all class members 'share common objectives and the same factual and legal positions [and] have the same interest in establishing the liability of [defendants]." *Ward*, 595 F.3d at 180 (quoting *Gunnells*, 348 F.3d at 431). Additionally, conflicts that are "merely speculative or hypothetical" will not defeat a representative's adequacy. *Gunnells*, 348 F.3d at 430.

Mr. Hodge contends that his interests do not conflict with those of other potential class members, because "all seek a determination that Defendants failed to provide the 60-day WARN Act Notice and all seek the same remedies under the statute." [ECF 15 at 9]. He further asserts that "[b]y investigating, filing, and vigorously prosecuting this case, [he] has demonstrated a desire and ability to protect the interests of absent class members." [*Id.*]. The Court agrees. There appear to be no substantial differences between Mr. Hodge's claims and those of the proposed class members as to create a fundamental conflict of interest. The class members have similar factual and legal positions, and share common objectives, namely, establishing the liability of Defendants and entitlement to compensatory damages for unpaid wages and benefits. Accordingly, the Court finds that Mr. Hodge will adequately represent the class.

As to the adequacy of class counsel, Rule 23(g)(2) provides that "[w]hen one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." Fed. R. Civ. P. 23(g)(2). Subsection (g)(1) provides, in pertinent part, as follows:

In appointing class counsel, the court:

(A)     must consider:

        (i)      the work counsel has done in identifying or investigating potential claims in the action;

        (ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

        (iii)    counsel's knowledge of the applicable law; and

        (iv)    the resources that counsel will commit to representing the class;

(B)    may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C)    may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D)    may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E)    may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g)(1). Additionally, Rule 23(g)(4) requires that class counsel "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23g)(4).

        Mr. Hodge's attorneys, Gregory A. Hewitt and Anthony J. Majestro, claim to "both have experience litigating class actions in numerous contexts" and be "committed to the prosecution of this case." [ECF 15 at 9–10]. Thus far, counsel appears to have worked diligently to identify and investigate potential claims in this action, as demonstrated by the number of potential class members they seek to represent. Counsel cites to three class actions where they have, respectively or in conjunction, acted as class counsel, as evidence of similar experience and knowledge of applicable law. Finally, the Court surmises from the amount of effort already expended in the matter, as well as counsel's related experience in other class actions, that counsel has both the ability and intent to commit the appropriate resources to its representation. The Court, likewise, finds that

counsel will both fairly and adequately represent the interests of the class. Accordingly, the Court finds that counsel will adequately represent the class as class counsel.

### 6.     Predominance - Rule 23(b)(3)

Rule 23(b)(3) provides that a class action may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members, and [if] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In a Rule 23(b)(3) class action, "the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart*, 255 F.3d at 146 n.4 (quoting *Amchem*, 521 U.S. at 609); *1988 Tr. for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 522 (4th Cir. 2022). "While commonality serves to ask whether class-wide proceedings are even possible, predominance 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Stafford*, 123 F.4th at 679 (quoting *Amchem*, 521 U.S. at 623); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). To satisfy the predominance requirement, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods*, 577 U.S. at 453; *see Williams*, 59 F.4th at 86 (quoting *Krakauer*, 925 F.3d at 658).

After careful consideration of the common and individual questions in this case, the Court finds no questions requiring individualized inquiry predominate over those questions of law or fact common to all class members. While each potential class member's total damages will vary depending on his or her rate of pay, the formula to calculate damages will be uniform across the

class. The other questions of law and fact applicable to the class members' claims are, as Mr. Hodge contends, "largely resolved by the allegations deemed admitted as a result of default." [ECF 15 at 11]. For these reasons, the Court finds that predominance is satisfied.

### 7. Superiority - Rule 23(b)(3)

Lastly, Rule 23(b)(3) requires that class action "be superior to other available methods for the fair and efficient adjudication of the controversy" so as to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal citation and quotation marks omitted).

This requirement is clearly satisfied in this case. Each of the potential class members in this action is an employee whose employment was allegedly terminated without the requisite notice under the WARN Act. Although each class member is entitled to bring a separate suit for resulting damages, principles of judicial economy warrant the use of the class action to adjudicate all such claims together. Otherwise, dozens of nearly identical lawsuits would flood the Court's docket, wasting the resources of both the judicial system and the affected parties. Accordingly, the Court finds that this class action is superior to other available methods of adjudication for the class members' claims.

### V.

Based upon the foregoing, the Court **ORDERS** as follows:

1. That Plaintiff's Motion [**ECF 14**] is **GRANTED IN PART** as to default and class certification;

2. That the class is **CERTIFIED** as moulded therein**;**

3. That Brian Hodge is **APPOINTED** class representative;

4. That Anthony J. Majestro and Greg A. Hewitt are **JOINTLY APPOINTED** as class counsel;

5. That class counsel is directed to file, on or before July 1, 2025, a plan for providing notice to the class pursuant to Rule 23(c)(2); and

6. That the Court **RESERVES JUDGMENT** on the amount of damages for the purposes of default judgment pending the delivery of notice and an evidentiary hearing to be set at a later date upon request.

The Court **DIRECTS** the Clerk to send a copy of this written opinion and Order to counsel of record and to Defendants' registered agent on the Secretary of State's website.

ENTER: June 16, 2025

Frank W. Volk
Chief United States District Judge